UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

**EUGENE L. ROBINSON,**             Case No. 5:10 CV 504

    Plaintiff,                       Judge Christopher A. Boyko

    v.                                  REPORT AND RECOMMENDATION

**COMMISSIONER OF**
**SOCIAL SECURITY,**

    Defendant.                   Magistrate Judge James R. Knepp II

**Introduction**

Plaintiff Eugene Robinson appeals the administrative denial of disability insurance benefits (DIB) and supplemental security income benefits (SSI) under 42 U.S.C. §§ 405(g) and 1383(c)(3), respectively. The district court has jurisdiction under 42 U.S.C. § 405(g) and § 1383(c)(3).

This matter has been referred to the undersigned for a Report and Recommendation pursuant to Local Rule 72.2(b)(1). For the reasons stated below, the undersigned recommends the Commissioner's decision be reversed, and remanded for a rehearing.

**Background**

Plaintiff contends he has been disabled due to the combined effects of degenerative disc disease, right shoulder impingement, tendinitis, illiteracy, major depressive disorder, and borderline intellectual functioning. Plaintiff last performed heavy work as a mechanic's helper, and has not worked since. (Tr. 147, 151). He filed for benefits on May 28, 2003, and pursued his administrative remedies to the point of obtaining a denial from an administrative law judge (ALJ) dated March 7, 2007. (Tr. 22-30).

On August 7, 2007, Plaintiff again applied for DIB and SSI claiming an onset date of March

8, 2007. (Tr. 41).[1] On November 4, 2009, following administrative hearing and review of the medical record, an ALJ determined that Plaintiff was not disabled after March 8, 2007. (Tr. 43). The ALJ found Plaintiff was high school educated, and a "younger individual" at the time of alleged onset who had aged to the next category of "closely approaching advanced age" at the time of the decision. (Tr. 50). The ALJ conceded Plaintiff could not perform the physical demands of his past work, but found he could perform a limited range of light work, including work with a sit/stand option and no more than occasional climbing, stooping, bending, twisting, and crawling, no overhead reaching with his right arm, plus restriction to simple, routine unskilled tasks requiring limited concentration in a low stress work setting. (Tr. 47-48). Based on testimony from a vocational expert, the ALJ found Plaintiff was not disabled because he had sufficient functional capacity to perform other work as laundry worker, bench assembler of small parts, and production inspector. (Tr. 18-20, 51). This decision became the final decision of the Commissioner following the Appeals Council's denial of review. *See* 20 C.F.R. §§ 404.981 & 416.1481.

### Plaintiff's Contentions

Plaintiff challenges the ALJ's findings with the following series of arguments:

1. The ALJ erred in finding that Plaintiff is able to perform a range of light work activity;

2. The ALJ erred in failing to properly apply the medical-vocational guidelines;

3. Plaintiff is limited to less than the full range of sedentary work;

4. The treating physician, Dr. Jane Dailey provided substantial evidence that Plaintiff cannot perform light work and is restricted to reduced range of sedentary work;

---

[1]There is no onset date overlap; hence no question over reopening the prior denial of benefits. *See* 20 C.F.R. §§ 404.987& 404.988; 416.1487, & 416.1488.

5. Plaintiff has significant non-exertional limitations that restrict his mental capacity and preclude work activity; and,

6. Plaintiff is disabled pursuant to the medical-vocational guidelines.

## Standard of Review

Judicial review is limited to "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009). Substantial evidence is more than a scintilla of evidence, but less than a preponderance. *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Lindsley v. Comm'r of Soc. Sec.*, 560 F.3d 601, 604 (6th Cir.2009) (quoting *Richardson*, 402 U.S. at 401). "The substantial-evidence standard . . . presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts." *Blakley*, 581 F.3d at 406 (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir.1986)). Accordingly, the Court must defer to the ALJ's determination "even if there is substantial evidence in the record that would have supported an opposite conclusion." *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997); *see also Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994) (court may "not inquire whether the record could support a decision the other way").

## Sequential Evaluation Process

The Commissioner follows a five-step sequential evaluation in evaluating disability. This evaluation begins with the question whether the claimant is engaged in substantial gainful activity and then at the second step whether the claimant has a medically severe impairment. *See* 20 C.F.R. §§ 404.1520(a)(4)(i-ii) & 416.920(a)(4)(i-ii). At the third step the issue is whether the claimant has an impairment which meets or equals a listed impairment from the Listing of Impairments of

Appendix 1. *See* 20 C.F.R. §§ 404.1520(a)(iii) & (d); 416.920(a)(iii) & (d). If an impairment exists which meets the description from the listing or is its equivalent, the claimant is deemed disabled at that point without consideration of age, education or prior work experience. *See Bowen v. Yuckert*, 482 U.S. 137, 141 (1987); *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990) (Once a claimant has met this burden that ". . . his impairment matches or is equivalent to a listed impairment, he is presumed unable to work and is awarded benefits without determination whether he can perform his prior work or other work."). "At the fourth step of the sequential approach described in 20 C.F.R. § 404.1520, it is the claimant's burden to show that [he] is unable to perform her previous type of work." *Dykes ex rel. Brymer v. Barnhart*, 112 F. App'x 463, 467 (6th Cir. 2004)); *Studaway v. Sec'y of Health & Human Servs.*, 815 F.2d 1074, 1076 (6th Cir. 1987). Once the administrative decision-maker determines an individual cannot perform past relevant work, the burden of going forward shifts to the Commissioner at the fifth step to demonstrate the existence of types of employment compatible with the individual's disability. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391-92 (6th Cir. 1999).

### Opinions from Dr. Dailey

Plaintiff relies heavily on two opinions from his treating physician, Dr. Dailey, that assess both mental and physical restrictions. (Tr. 329-330, 358-359). With respect to mental residual functional capacity, Dr. Dailey stated that Plaintiff has very limited schooling and diminished intelligence due to prior drug use. (Tr. 330). This assessment generally ranks Plaintiff's mental capabilities as fair or poor; but Dr. Dailey was treating Plaintiff for his physical complaints, and there is no evidence that she has a psychological or psychiatric background.

With respect to physical residual functional capacity, Dr. Dailey assessed that Plaintiff is capable of light exertion with respect to lifting (twenty pounds), but he can stand or walk only for

4

one half hour and sit for one hour during an eight-hour workday. (Tr. 358). These extreme limitations are attributed to lower back pain, leg pain, and the lack of weight bearing endurance. (*Id.*). Dr. Dailey also found manipulation difficulties as to push/pulling due to numbness and pain of the hands. (Tr. 359). She further found that Plaintiff can "rarely or none" climb, balance, stoop, crouch, kneel, or crawl. (*Id.*).

## Physical RFC Determination

The ALJ found Plaintiff could perform a reduced range of light work. The regulations define light work as:

> . . . lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.(emphasis supplied).

20 C.F.R. §§ 404.1567(b) & 416.967(b).

Social Security Ruling (SSR) 83-10 expands the definition of light work : "when it involves sitting most of the time but with some pushing and pulling of arm-hand or leg-foot controls, which require greater exertion than in sedentary work; e.g., mattress sewing machine operator, motor-grader operator, and road-roller operator (skilled and semiskilled jobs in these particular instances)." 1983 WL 31251, at *5.

*The ALJ had Substantial Evidence to Find Light Work Capability and Discount Dr. Dailey*

According to Dr. Dailey, Plaintiff could neither remain on his feet nor sit "most of the time"

5

and was therefore incapable of performing light work. Dr. Dailey's opinion also eliminates sedentary work, which involves seated work. *See* 20 C.F.R. §§ 404.1567(a) & 416.967(a). According to Plaintiff, Dr. Dailey's reports entitle him to benefits.

But the ALJ deferred to Dr. Scheatzle's November 2007 report and residual functional capacity assessment. (Tr. 44, 248-54). Dr. Scheatzle conducted a consultative examination of Plaintiff for the state agency. His examination included an interview, manual muscle testing, range of motion studies, and spinal x-ray. (*Id.*). X-ray revealed mild loss of L4-5 and L5-S1 disc space, consistent with mild degenerative disc disease, and minimal levoscoliosis. (Tr. 254). Muscle-testing revealed right-sided weakness in the shoulder and pelvic areas without atrophy. (Tr. 250-51). Dr. Scheatzle also found minimal scoliosis, flattening of the lumbar lordosis, antalgic gait, reduced right leg stance, right-sided paraspinal muscle tenderness, right-sided lower back muscle spasm, slight neurological abnormality in lower right leg, right shoulder protraction, and reduced ranges of motion in the right shoulder and lumbosacral spine. (Tr. 249-53). His impression was chronic low back pain with history of lumbar herniated disc and right leg radiculitis in S-1 dermatome. (Tr. 249). Considering this evidence, Dr. Scheatzle ascribed a residual functional capacity to Plaintiff allowing for "sitting . . . done frequently with change in position every thirty minutes, [s]tanding frequently with change of position every thirty minutes, [w]alking one city block, [l]ifting . . . presently to light duty level of twenty pounds occasionally or ten pounds more frequently" and no repetitive bending, twisting, climbing, or crawling. (*Id.*). Dr. Scheatzle also stated Plaintiff's reading and writing skills were limited to a third or fourth grade level, but the foundation for this conclusion is not within the report. (*Id.*).

The ALJ rejected Dr. Dailey's opinion on Plaintiff's physical limitations in favor of Dr.

6

Scheatzle's opinion finding a residual functional capacity for a reduced range of light work with a sit/stand option; no more than occasional climbing, stooping, bending, twisting, and crawling; and occasional overhead reaching with the right arm. (Tr. 47). Plaintiff does not disagree that these findings are consistent with Dr. Scheatzle's opinion.

But Plaintiff argues Dr. Dailey's physical residual functional capacity opinion must be favored over Dr. Scheatzle's under the treating physician rule. *See Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). Under this rule, reports of physicians who have treated the applicant over a long period of time are entitled to greater weight than the reports of physicians employed by the government for the purpose of defending against a claim for disability. *See* 20 C.F.R. §§ 404.1527(d)(2)-(3) & 416.927(d)(2)-(3). The ALJ must give the opinion from the treating source controlling weight if he finds the opinion "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record." *Wilson*, 378 F.3d at 544 (quoting 20 C.F.R. §§ 404.1527(d)(2) & 416.927(d)(2)). When the ALJ does not give the opinion from a treating physician controlling weight, the ALJ must consider: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the supportability of the opinion; (4) the consistency of the opinion with the record as a whole; and (5) the specialization of the treating source, as mandated under 20 C.F.R. §§ 404.1527(d) & 416.927(d). *See Bowen v. Comm'r of Soc. Sec.,* 478 F.3d 742, 747 (6th Cir. 2007) (citing *Wilson*, 378 F.3d at 544). Consistency and supportability are key.

Consistency is simply comparison "with the record as a whole." 20 C.F.R. §§ 404.1527(d)(4) & 416.927(d)(4). Under supportability the ALJ considers the medical signs and

laboratory findings and "[t]he better an explanation a source provides for an opinion, the more weight" it is given. 20 C.F.R. §§ 404.1527(d)(3) & 416.927(d)(3). Supportability of the medical opinion of disability has long been a key factor in determining how much weight to give the opinion. The ALJ is not bound by a conclusory opinion which is unsupported by detailed objective criteria, or when there is substantial medical evidence to the contrary. *See Cutlip v. Sec'y*, 25 F.3d 284, 286-87 (6th Cir. 1994).

The ALJ found Dr. Dailey's conclusions inconsistent with her treatment records, including those from physical therapy and pain management. (Tr. 49). Further, the ALJ found Dr. Dailey's opinion lacked explanation, especially considering Dr. Dailey had reported in February 2008 that Plaintiff still had chronic back pain but was living with it successfully. (Tr. 49, 286-87). The ALJ further expressed his belief that the mildness of the objective medical evidence did not support Dr. Dailey's degree of restriction, and that Plaintiff had testified that he had no numbness in his hands, responding: "No, just arthritis pain." (Tr. 16, 49). Whereas, Dr. Dailey based her opinion in part on hand numbness. (Tr. 359). The ALJ also cited to Plaintiff's rating of his pain as two or three on a scale of ten. (Tr. 49, 237). But the most devastating inconsistency with Dr. Dailey's opinion is Plaintiff's descriptions of his activities. (Tr. 11-14, 49).

Plaintiff admitted he had mowed his yard the past year with a non self-propelled push mower, but his cousin does it now, and he just uses a string trimmer; he can stand for 40-45 minutes at a time with breaks but not in one spot; he walks for an hour on the treadmill at physical therapy; lifts weights at physical therapy and pedals; and, his hobby is carving while sitting. (Tr. 11-14). The ALJ thus had substantial evidence to reject Dr. Dailey's opinion. It was inconsistent with the record as a whole, including Plaintiff's admitted capabilities, and lacked support for the severity of

8

restrictions.

Plaintiff argues his testimony is consistent with Dr. Dailey's findings (Doc. 12, at 12), but it was not. Plaintiff then goes on to criticize the ALJ for not inquiring about the size of Plaintiff's yard or how often he uses a string trimmer. It is difficult to see how these additional inquires would have aided Plaintiff in establishing total disability. Plaintiff's physical therapy regimen is sufficient to undermine Dr. Dailey's opinion. The improbability of Plaintiff pushing a mower when, according to Dr. Dailey, he is incapable of being on his feet more than one half hour per day, provided the ALJ an additional reason to discount Dr. Dailey's opinion.

Plaintiff also criticizes the ALJ for referring to only one of Plaintiff's pain ratings, two or three out of ten, and the ALJ's discrediting him based on his lack of hand numbness. Plaintiff argues it is plausible and not inconsistent with the record that his pain was low on that day the therapist made the report, but that he continued to suffer and complain of ongoing pain to Dr. Dailey. (Doc. 12, at 10). Regarding hand numbness, Plaintiff argues that he was responding to his contemporaneous experience at the hearing when he reported no hand numbness, and Dr. Dailey noted numbness two years earlier. (*See* Tr. 235). However, Dr. Dailey was referring to numbness in the context of radicular **leg** pain, not hand pain or numbness. (Tr. 235). Plaintiff's assertions are based on plausibility, and not on record evidence rebutting the ALJ's conclusion. The ALJ's conclusion was based on evidence from the record; hence it was supported by substantial evidence. The ALJ provided "good reasons" to discount Dr. Dailey's opinion of disability. *See Wilson,* 378 F.3d at 544 (when the ALJ does not give the opinion from the treating physician controlling weight, the ALJ must "always give good reasons," and to failure to do so results in reversal.); *see also* 20 C.F.R. §§ 404.1527(d)(2) & 416.927(d)(2); SSR 96-2p & 96-5p.

9

*Substantial Evidence Supports Discrediting Plaintiff*

This leads to the ALJ's rejection of Plaintiff's credibility. Plaintiff argues the ALJ erred by partially discrediting him. The role of this Court, however, is not to re-examine the credibility of Plaintiff's testimony or resolve conflicting evidence, but rather to determine whether substantial evidence supports the ALJ's determination on credibility within the meaning of the Social Security Act. *See Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001); *Rogers,* 486 F.3d at 247. "The ALJ's credibility findings are subject to substantial deference on review[.]" *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 287 (6th Cir. 2009) (quoting *Barker*, 40 F.3d at 795). Further, when the treating physician's opinion of disability is based on acceptance of subjective complaints of pain, evaluation of the alleged pain and Plaintiff's credibility goes hand-in-hand with weighing the treating physician's opinion. *See Rogers*, 486 F.3d at 247.

The ALJ engaged in pain analysis in accordance with SSR 96-7p and the regulations to assess Plaintiff's credibility, hand-in-hand with the rejection of Dr. Dailey's opinion. (Tr. 48-49); *See also* 20 C.F.R. § 404.1529(c)(3)(i-vii); § 416.929(c)(3)(i-vii). A key factor for evaluating subjective complaints of pain is the claimant's daily activities. *Bogle v. Sullivan*, 998 F.2d 342, 348 (6th Cir. 1993); 20 C.F.R. §§ 404.1529(c)(3)(i) & 416.929(c)(3)(i). The ALJ engaged in the proper analytical procedure both with respect to Plaintiff's allegations of pain and rejection of the treating physician's opinion, and his conclusions were supported by evidence from the record. The ALJ's partial rejection of Plaintiff's credibility was, as a result, supported by substantial evidence.

*Conclusion Regarding Physical RFC Determination*

In summation, with regard to Plaintiff's physical RFC, the ALJ's decisions:

1. To reject Dr. Daily's physical residual functional capacity opinion;

2. To accept Dr. Scheatzle's residual functional capacity opinion;

3. To discredit alleged subjective pain in Plaintiff's testimony and as a basis for Dr. Dailey's opinion; and,

4. To find that Plaintiff could physically perform a reduced range of light work;

all were supported by substantial evidence.

**Mental RFC Determination**

The ALJ found Plaintiff was mentally restricted to simple, routine, unskilled tasks which required limited concentration and were in the lower third of the "stress continuum."  (Tr. 47). Plaintiff contends this ignored significant non-exertional restrictions which eliminate the possibility of performing other types of employment.  Dr. Dailey indicated Plaintiff would have "poor" ability to complete a normal workday or work week without interruption, and perform at a consistent pace without an unreasonable number and length of rest periods.  (Tr. 330).  Plaintiff contends Dr. Dailey's opinion is not refuted, citing both consultative psychologist Dr. Reece's[2] conclusion that ability to cope with stress was "markedly impaired" (Tr. 285), and non-examining state agency psychologist Dr. Waddell's report that Plaintiff was "moderately" limited in his ability to complete a normal workday and work week, and would need an unreasonable number of rest periods.  (Tr. 269).  Again, Plaintiff argues he is entitled to benefits because the ALJ's decision otherwise is

---

[2] Plaintiff refers to Dr. Swearingen, the name appearing on the report's letterhead. The psychological evaluation was actually performed by Dr. Reece.  (Tr. 281-85).

contrary to the evidence of record.

*Treating Physician Rule*

Plaintiff further points to the ALJ's omission of Dr. Dailey's mental assessment from consideration in the decision. The Court must "reverse and remand a denial of benefits, even though 'substantial evidence otherwise supports the decision of the Commissioner,' when the ALJ fails to give good reasons for discounting the opinion of the claimant's treating physician." *Wilson*, 378 F.3d at 543-46. Here, the ALJ failed to give good reasons, because he never even mentioned Dr. Dailey's mental residual functional capacity assessment.

Defendant counters that Dr. Dailey was not a "treating" physician for Plaintiff's mental health treatment. *See Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007) ("A physician qualifies as a treating source if the claimant sees [the physician] 'with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the] medical condition.'" (quoting 20 C.F.R. § 404.1502). Defendant is correct on this point. The opinion counts as the opinion of a treating physician only when that physician treats the condition that is the reason for restriction. *See Blakley*, 581 F.3d at 407 (citing *Smith,* 482 F.3d at 876); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 540 (6th Cir. 2007) (new patient evaluation was not treatment). Therefore the ALJ was not required to give "good reasons" for discounting Dr. Dailey's opinion. Resolution of Dr. Dailey's treating or non-treating status, though, does not put the matter of the ALJ's failure to consider Dr. Dailey's mental capacity assessment to rest.

*Failure to Consider Evidence of Stress*

The governing regulation states: "Regardless of its source, we will evaluate every medical opinion we receive." 20 C.F.R. §§ 404.1527(d) & 416.927(d). Defendant ignores the ALJ's

12

responsibility, and instead briefs a critique of Dr. Dailey's opinion on mental capacity. (Doc. 13, at 11). The Court, though, cannot substitute Defendant's argument in court in lieu of an ALJ's decision. Judicial review is limited to "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley*, 581 F.3d at 405. Where the ALJ ignores a residual functional capacity assessment from a non-treating source, the issue is whether "the ALJ would have decided the case differently had he considered the FCE [functional capacity evaluation]". *Hensley v. Comm'r of Soc. Sec.*, 214 F. App'x 547, 551 (6th Cir. 2007).[3]

Here, Dr. Reece issued his opinion after examining Plaintiff at the behest of the state agency. (Tr. 281-85). Dr. Reece clinically interviewed Plaintiff, performed intelligence testing (Wechsler Adult Intelligence Scale (WAIS)-III), and academic achievement testing (Wide Range Achievement Test (WRAT)-4). He concluded Plaintiff suffered major depressive disorder (recurrent and mild), learning disorder, and borderline intellectual functioning, and Plaintiff had "marked" limitation on ability to cope with stress. (Tr. 284-85). "Marked" limitation indicates functioning seriously impaired by inability to perform daily activities "on a consistent, useful, routine basis, or without undue interruptions or distractions." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00C(1). Dr. Dailey's opinion on stress is consistent with Dr. Reece's conclusion.

The Court could therefore resolve the issue with a straightforward review of how the ALJ evaluated Dr. Reece's similar opinion on stress handling limitation. But the ALJ also did not discuss

---

[3]*Compare Wilson*, 378 F.3d at 548 (when the ALJ ignores the opinion from a **treating** physician, the omission is harmless when "the ALJ attributed to the claimant limitations consistent with those identified by the treating physician.") (citing *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001)).

13

that part of Dr. Reece's report.  The Court cannot answer the question of whether the ALJ would "have decided the case differently had he considered [Dr. Dailey's] FCE [functional capacity evaluation]" because the ALJ did not consider the record evidence.

The ALJ concluded Plaintiff was limited to "work that exists in the lower 1/3 of the stress continuum, defined as requiring no independent decision-making and no more than occasional changes in the work routine."  (Tr. 47-48).  The ALJ attributes this conclusion to "careful review of the entire record" (Tr. 47), but even Defendant cannot point to the source providing substantial evidence for this. Dr. Dailey noted limitation due to stress as did psychologists Dr. Reece (Tr. 285), and Dr. Waddell (Tr. 271-72).  On the other hand, Dr. Khan rejected Dr. Reece's conclusion on stress.  (Tr. 304).  However, this dispute over stress handling ability cannot be gleaned from reading the ALJ's decision.  The ALJ did not address the issue despite the regulatory requirement for the ALJ to "explain in the decision the weight given to the opinions of a State agency medical or psychological consultant or other program physician or psychologist".  20 C.F.R. § 404.1527(f)(2)(ii); § 416.927(f)(2)(ii).

The ALJ did note Dr. Reece's comment from the clinical interview that Plaintiff "reported . . . he dealt with stress and pressure on the job well."  (Tr. 45, 282).  This cannot be construed as an attempt to point out an internal inconsistency in Dr. Reece's report since Dr. Reece clearly limited his restriction on coping with stress to the present time.  (Tr. 285) ("markedly impaired at this time").  Dr. Reece's remark about positive stress coping ability related to the time Plaintiff was employed several years before.  (Tr. 282).  Thus, the ALJ failed to address:

1.   Dr. Dailey's mental capacity assessment;

2.   A crucial finding from Dr. Reece's report; and

14

      3.      Dr. Waddell's remarks concerning stress as limiting Plaintiff to a "static work setting where no strict production/time demands are imposed."

(Tr. 272). The ALJ considered the extent of Plaintiff's mental impairment, but did not make this consideration based on the evidence in this record. The ALJ's decision with respect to stress and its vocational impact on Plaintiff was not supported by substantial evidence.

      Finally, Plaintiff argues the evidence is vocationally conclusive because the vocational expert responded that there were no jobs to a question about "marked" inability to maintain persistence and pace. (*See* Tr. 20). Plaintiff's question to the vocational expert has no foundation in the record. No physician or psychologist found "marked" restriction on persistence and pace. Dr. Reece found persistence was "good" and pace was "adequate." (Tr. 285). Dr. Waddell and Dr. Khan both found "moderate" difficulty maintaining concentration, persistence or pace (Tr. 265, 298), and Dr. Dailey's opinion did not contain a Psychiatric Review Technique rating of concentration, persistence or pace under 20 C.F.R. §§ 404.1520a(c)(4) & 416.920a(c)(4). (*See* Tr. 329-30).

*Illiteracy*

      The final dispute is whether Plaintiff is illiterate.

      The ALJ found Plaintiff has "at least a high school education." (Tr. 50). Plaintiff did graduate from high school, but in special instruction classes. (Tr. 9, 285). Under the governing regulation, a "high school education" measures the individual's educational attainment which means that the individual's "abilities in reasoning, arithmetic, and language skills acquired through formal schooling [are] at a 12th grade level or above." 20 C.F.R. § 404.1564(b)(4); § 416.964(b)(4). All evidence in the record shows Plaintiff has a learning disability and a very limited educational attainment. (*See* Tr. 285). "A numerical grade level is properly used to determine a claimant's

15

educational abilities only if contradictory evidence does not exist." *Skinner v. Sec'y of HHS,* 902 F.2d 447, 450 (6th Cir.1990). The ALJ recognized this when he found Plaintiff had a residual functional capacity restricted to "no more than minimal reading or writing." (Tr. 48).

The ALJ asked the vocational expert to consider an individual of Plaintiff's educational background and a job with minimal reading or writing requirements. (Tr. 19). The ALJ did not err at the hearing by interjecting "high school" attainment into consideration, but there is an issue with his description of Plaintiff's "minimal reading or writing," rather than "illiteracy."

The governing regulations state:

Illiteracy means the inability to read or write. We consider someone illiterate if the person cannot read or write a simple message such as instructions or inventory lists even though the person can sign his or her name. Generally, an illiterate person has had little or no formal schooling.

20 C.F.R. §§ 404.1564(b)(1) & 416.964(b)(1). In the Sixth Circuit, an individual with educational attainment of less than the third grade level was considered functionally illiterate. *See Skinner*, 902 F.2d at 450-51. Defendant argues Dr. Reece was the only source to test Plaintiff's reading, writing and cognitive abilities and he found Plaintiff not illiterate.

Dr. Reece's WRAT-4 test results indicated Plaintiff read at the 2.4 grade equivalent level and ranked in the 0.4 percentile; his verbal comprehension was also at the 2.4 grade equivalent level and ranked in the 0.2 percentile; his spelling was at the 1.7 grade equivalent level and ranked in the 0.2 percentile; and math was at the kindergarten grade equivalent and ranked at the 0.1 percentile. (Tr. 284). Dr. Reece found Plaintiff had "poor" arithmetic and reading skills. (Tr. 285). Plaintiff testified he cannot read newspapers and "a lot" of books because he can "make out" only three and four letter words. (Tr. 13-14). He stated he needs his mother's help to write out a grocery list and that he writes checks for his mother, but she helps him spell. (Tr. 14).

The ALJ's restriction to "minimal reading and writing" fails to appreciate the extent of Plaintiff's limitations. It is not a question of degree but lack of ability. Consequently, the vocational expert's response identifying several jobs is questionable. *See Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 632 (6th Cir. 2004) (hypothetical question posed to a vocational expert "should be a more complete assessment of her physical and mental state and should include an "accurate . . . potray[al] [of her] individual physical and mental impairment[s].") (quoting *Varley v. Sec'y of HHS*, 820 F.2d 777, 779 (6th Cir. 1987)).

Even so, vocational testimony would not have been necessary if the ALJ had accepted Appendix 2's medical-vocational guidelines when illiteracy is a factor, thus finding disability. *See* 20 C.F.R. §§ 404.1569a(d) & 416.969a(d) ("we will not directly apply the rules in appendix 2 unless there is a rule that directs a conclusion that you are disabled based upon your . . . limitations"). The ALJ implicitly rejected illiteracy because he relied on vocational expert testimony.

Although the ALJ's finding was implicit, if it was not supported by substantial evidence then Plaintiff is entitled to benefits under the guidelines of Appendix 2. Resolution turns on whether there was evidence that Plaintiff was literate. Defendant stakes his position on Dr. Reece's report, but attainment of less than a third grade level of proficiency requires closer scrutiny of this matter. *See Deaton v. Comm'r of Soc. Sec.*, 315 F. App'x 595, 601 (6th Cir. 2009) ("The record is replete with evidence that Mr. Skinner is illiterate" because his test results "indicate that he reads *below* the third grade level")  (emphasis added)") (quoting *Skinner*, 902 F.2d at 450); *Lambdin v. Comm'r of Soc. Sec. Admin.*, 62 F. App'x 623, 625 (6th Cir. 2003) ("*Cf. Skinner v. Secretary of Health & Human Servs*., 902 F.2d 447, 450-51 (6th Cir. 1990) (concluding that a claimant who reads below the third-grade level and whose math computational skills place him in the first percentile of his age

population is illiterate)"). It is tempting to view *Skinner* as setting a rule that illiteracy is measured by reading and writing ability below the third grade level. However, Plaintiff does not argue for such a rule, and the undersigned is reluctant to read *Skinner* as creating such a rule. *Skinner* noted the WRAT testing results, but it went on to include consideration of the vocational expert's testimony that a person who reads and writes on the third grade level is functionally illiterate, and the WRAT test administrator's explanation that the low test scores indicated limitation that "will clearly hinder this individual in terms of performing any type of work or training that would require even minimal math or reading capabilities." *Skinner*, 902 F.2d at 449-51. Thus, the decision did not rest entirely on the raw test scores but on expert elaboration on their meaning for that individual claimant.

Accordingly, there was evidence that Plaintiff may not have been illiterate. Plaintiff indicated he could read and write to an extremely limited extent,[4] the vocational expert was not asked to elaborate on the vocational significance of the WRAT test scores, and Dr. Reece limited his comments to "reading, spelling, and word recognition skills are below average." (Tr. 284). The undersigned cannot say as a matter of law that Plaintiff is illiterate for purposes of the Social

---

4

*Compare Welchance v. Bowen*, 731 F. Supp. 806, 816-18 (M.D. Tenn. 1989) (claimant was illiterate despite ability to read at 3.7 grade equivalent because there was no evidence that she could also write.); *Dixon v. Heckler*, 811 F.2d 506, 510 (10th Cir. 1987) ("[L]iteracy turns upon the ability to write as well as to read.").

Security Act, and cannot recommend granting his request for an award of benefits.[5]

*Remand for Rehearing*

Congress authorizes reversal under the fourth sentence of 42 U.S.C. § 405(g) "with or without remanding the cause for a rehearing." *See Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 174-75 (6th Cir. 1994) (citing *Sullivan v. Hudson*, 490 U.S. 877, 880 (1989)). The standard is that "[a] judicial award of benefits is proper only where the proof of disability is overwhelming or where the proof of disability is strong and evidence to the contrary is lacking," and where no factual issues remain unresolved in the case. *Felisky v. Bowen*, 35 F.3d 1027, 1041(6th Cir. 1994) (quoting *Faucher,* 17 F.3d 171, 176). In all other instances remand under the fourth sentence for rehearing is required. *See Faucher,* 17 F.3d at 175-76. The ALJ failed to resolve multiple factual issues regarding Plaintiff's mental RFC due to his failure to address:

1. Dr. Dailey's mental residual functional capacity assessment;

---

[5] Case law from other circuits as summarized in *Heldenbrand v. Chater,* 1997 WL 775098, at *6 (7th Cir. 1997), indicates that the finding of illiteracy is determined on a case-by-case basis absent any clear rule:

> Compare *Starks v. Bowen* 873 F.2d 187, 189-90 (8th Cir.1989) (upholding a finding of literacy where claimant can "stumble over the words" in a newspaper, and knows "some" but not a "lot" of the words, and had a tested reading score "below a third grade equivalent"); *Glenn v. Secretary of Health & Human Services*, 814 F.2d 387, 390-91 (7th Cir.1987) (upholding finding of literacy where claimant had completed either the 4th or 6th grade, could write "only the simplest messages" and comprehend "only the simplest written instructions," although he could not read a newspaper or write a letter; concluding that claimant fell into "marginal education" classification), with *Eggleston v. Bowen*, 851 F.2d 1244, 1248 (10th Cir.1988) (reversing finding of literacy where claimant offered unrebutted testimony that other people had done the reading and writing for him in previous employment); *Dixon v. Heckler*, 811 F.2d 506, 510 (10th Cir.1987) (claimant is illiterate where she completed six or seven years of formal schooling, but could not read a newspaper, and she and her sister testified that she could not write; there was no indication that she could write even a simple message).

    2. Dr. Reece's opinion with respect to "marked" inability to cope with stress;

    3. Dr. Waddell's and Dr. Khan's opinions with respect to stress;

    4. the definitions concerning educational attainment; and,

    5. Failing to explicitly address the question of Robinson's literacy.

Consequently, remand for rehearing is required.

## Conclusion and Recommendation

The ALJ's decision to deny DIB and SSI benefits was based on disregard of the evidence of record and incorrect application of law with respect to educational attainment, and illiteracy. The administrative decision consequently lacks substantial evidence supporting it. Therefore, the undersigned recommends the administrative decision be reversed and remanded for rehearing.


                                                              s/James R. Knepp II
                                                           United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of mailing of this notice. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See U.S. v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).